**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

QUINCY STONE,                              )    CASE NO. 5:19-cv-02397
                                           )
    Plaintiff,                         )
                                           )
      v.                          )    MAGISTRATE JUDGE DAVID A. RUIZ
                                           )
ANDREW SAUL,                               )
    *Comm'r of Soc. Sec.*,             )    **MEMORANDUM OPINION AND ORDER**
                                           )
    Defendant.                         )

Plaintiff, Quincy Stone (Plaintiff), challenges the final decision of Defendant Andrew

Saul, Commissioner of Social Security (Commissioner), denying his applications for

Supplemental Security Income (SSI) under Title XVI of the Social Security Act,    *et seq*. (Act).

This court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned

United States Magistrate Judge pursuant to consent of the parties. For the reasons set forth

below, the Commissioner's final decision is AFFIRMED.

**I. Procedural History**

On May 7, 2015, Plaintiff filed his application for SSI, alleging a disability onset date of

April 29, 2010. (R. 9, Transcript ("Tr.") 256). The application was denied initially and upon

reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

(Tr. 130-152). Plaintiff participated in the hearing on June 6, 2017, was represented by counsel, and testified. (Tr. 38-56). A vocational expert ("VE") also participated and testified. *Id*. On July 17, 2017, the ALJ found Plaintiff not disabled. (Tr. 108-120). On April 27, 2018, the Appeals Council ("AC") remanded the case back to the ALJ for another hearing. (Tr. 125-128).

Plaintiff participated in a second hearing on September 20, 2018, was represented by counsel, and testified. (Tr. 57-77). Plaintiff's aunt and a vocational expert ("VE") also participated and testified. *Id*. On October 15, 2018, the ALJ found Plaintiff not disabled. (Tr. 31). On August 22, 2019, the Appeals Council denied Plaintiff's request to review the ALJ's decision, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-3). On October 15, 2019, Plaintiff filed a complaint challenging the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11 & 13).

Plaintiff asserts the following assignment of error: (1) the ALJ finding at step three—that Plaintiff's impairments did not meet or equal the criteria of Listing 12.05B—is unsupported by substantial evidence. (R. 11, PageID# 1125-1129).

## II. Evidence

### A. Relevant Medical and Other Evidence[1]

#### 1. Treatment Records

On September 5, 2003, when Plaintiff was fifteen years old, he was assessed by psychologist Dan Tousley, Ph. D. (Tr. 393-395). On the Wechsler Intelligence Scale for Children III (WISC-III), Plaintiff scored a Full Scale IQ of 64, a Verbal IQ of 71, and a Performance IQ of

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs *and* also deemed essential to the assignment of error raised.

62. (Tr. 394). The Full Scale IQ score of 64 placed him in the "Intellectually Deficient range of intellectual ability." *Id.*

During the 2005-2006 school year, Plaintiff was in a self-contained classroom 10 percent of the time due to intellectual difficulties. (Tr. 420-423). In high school, between May 9, 2006 and May 9, 2007, Plaintiff was placed in an Individualized Education Program (IEP) that indicated he would receive special education services approximately twenty-one percent of the time. (Tr. 288-290).

On August 7, 2014, Plaintiff saw psychiatrist Dr. Kotreshwar Hiremath, along with his case manager, for an annual evaluation. (Tr. 459-462). Dr. Hiremath noted that Plaintiff had "maintained stability" during the past year, had "never [been] hospitalized for psychiatric reasons," and his medication compliance was questionable as Plaintiff reported not having taken his medication for a month. (Tr. 459). He noted Plaintiff was able to take care of all of his daily living activities by himself. *Id.* On mental status examination, Plaintiff was mildly unkempt, made normal eye contact, had a spontaneous demeanor, was oriented x 4, had no memory disturbance, fair insight and judgment, restricted affect, clear speech, "okay" attention and concentration, no delusions/illusions, and below average intellect. (Tr. 460-461). He was ascribed a GAF score of 50.[2] (Tr. 462).

---

[2] The GAF scale reports a clinician's assessment of an individual's overall level of functioning. *Diagnostic & Statistical Manual of Mental Disorders*, 32-34 (American Psychiatric Ass'n, 4th ed. revised, 2000) (DSM-IV). An individual's GAF is rated between 0-100, with lower numbers indicating more severe mental impairments. A GAF score between 41 and 50 indicates serious symptoms or a serious impairment in social, occupational, or school functioning. A person who scores in this range may have suicidal ideation, severe obsessional rituals, no friends, and may be unable to keep a job. *See Diagnostic and Statistical Manual of Mental Disorders*, *supra*, at 34. An update of the DSM eliminated the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." *See Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) at 16 (American Psychiatric Ass'n, 5th ed., 2013).

On October 2, 2014, Plaintiff reported to Dr. Hiremath that he was "doing okay" with no reported mood problems, no hallucinations, and suicidal/homicidal ideation. (Tr. 455). On mental status examination, Plaintiff had fair insight/judgment, no depression or anxiety, a restricted affect, intact thought process, normal thought content, and no memory disturbance. (Tr. 455-456). A mental status examination on October 30, 2014 yielded similar findings. (Tr. 452-453).

On January 27, 2015, Dr. Hiremath noted that Plaintiff had questionable compliance with medication. (Tr. 474-475). Dr. Hiremath noted the presence of memory disturbance, fair judgment and insight, no depression or anxiety, restricted affect, intact thought process with thought content within normal limits, and normal perception. *Id*.

On April 9, 2015, Plaintiff denied hallucinations but admitted to responding to internal stimuli and laughed and talked to himself. (Tr. 469). He had been in jail recently on a domestic violence charge after hitting a family member. *Id*. Plaintiff reported no mood problems, though his aunt who accompanied him reported mood swings. *Id*.

On May 8, 2015, Plaintiff's mental status examination was largely unremarkable. (Tr. 465-467). Dr. Hiremath's mental status examination of Plaintiff was similarly unremarkable, on August 12, 2015. (Tr. 524-525).

On May 25, 2016, Dr. Hiremath observed that Plaintiff was mildly unkempt, had no memory disturbance, fair insight and judgment, no depression, no anxiety, a restricted affect, and intact thought process with thought content within normal limits. (Tr. 643-644).

On September 6, 2016, Plaintiff reported that he had no side effects from medication, he denied hallucinations, and reported depression secondary to abiding by the rules set by his aunt with whom he lived. (Tr. 716). He indicated he wanted independent housing. *Id*.

4

On February 2, 2017, Plaintiff was seen by Todd Wilke, M.D. (Tr. 792-793). Plaintiff had fair hygiene, was calm and cooperative, had goal-directed thought, lacking in spontaneity, clear speech, a subjectively euthymic mood with a flat affect, fair insight and judgment, and no hallucinations or delusions. *Id.*

On May 18, 2017, Dr. Wilke again examined Plaintiff and made the same observations as in February. (Tr. 944).

On February 28, 2018, Plaintiff admitted that he had not been fully compliant with his psychiatric medications, including not taking Aripiprazole for a year because he felt he was asymptomatic. (Tr. 979).

### 2. Medical and Non-Medical Opinions Concerning Plaintiff's Functional Limitations

A few months before his alleged onset date, Sudhir Dubey, Psy. D., performed a Disability Assessment Report, on January 6, 2010. (Tr. 445-450). Plaintiff denied then current psychiatric care. (Tr. 446). He reported graduating from high school. *Id.* Plaintiff indicated he last worked in 2007 at a factory, but was terminated for leaving the line, and indicated he has difficulty maintaining employment "due to his attention and quality of work." *Id.* Dr. Dubey noted Plaintiff's responses during the course of the evaluation were inconsistent and evasive. *Id.* Dr. Dubey diagnosed "adjustment disorder with depressed mood chronic," and assigned Plaintiff a Global Assessment of Functioning (GAF) score of 70, indicative of mild symptomology.[3] Dr. Dubey opined that Plaintiff's ability to understand, remember, and follow both simple and complex instructions was not impaired, nor was his ability to maintain attention, concentration,

---

[3] A GAF score between 61 and 70 indicates some mild symptoms or some difficulty in social, occupational, or school functioning. A person who scores in this range may have a depressed mood, mild insomnia, or occasional truancy, but is generally functioning pretty well and has some meaningful interpersonal relationships. *Id.*

and pace on simple, repetitive tasks. (Tr. 449-450). Dr. Dubey also indicated that Plaintiff's ability to relate to others was not impaired, nor was his ability to withstand the stress and pressures of day-to-day work. *Id.*

On June 5, 2015, treating psychiatrist Dr. Hiremath completed a mental functional capacity assessment. (Tr. 493-494). In the area of understanding and memory, the only category of marked limitation was in Plaintiff's ability to understand and remember detailed instructions. In ten of the remaining eleven categories, Dr. Hiremath assessed moderate limitations or less. *Id.* In the area of social interaction, Dr. Hiremath found Plaintiff was either not significantly limited or only moderately limited. *Id.* In the area of adaptation, Dr. Hiremath assessed exclusively moderate limitations. *Id.* Nevertheless, Dr. Hiremath concluded that Plaintiff was unemployable. *Id.* Also in June of 2015, Dr. Hiremath completed a mental status questionnaire. (Tr. 497-499). Dr. Hiremath reported that with respect to flow of conversation and speech, Plaintiff was slow in answering questions; had an "ok" mood but a restricted affect; had borderline intellectual functioning; had problems remembering and was slow to respond; had fair insight and judgment; had a history of substance abuse; could remember understand, and follow simple directions; could maintain attention to some extent; had limited ability to sustain concentration and persistence; and had limited adaptation. (Tr. 497-498).

On June 10, 2015, Community Support Services (CSS) social worker Jasmyne Wilson completed a checklist questionnaire indicating that Plaintiff had "less than adequate" functioning with respect to concentration, persistence, memory, hygiene, and following simple instructions and program rules. (Tr. 506.) She noted Plaintiff smoked marijuana occasionally, and that Plaintiff has not had any periods of sobriety since she began working with him. (Tr. 507).

On September 1, 2015, Plaintiff underwent a consultative psychological evaluation

performed by Robert Dallara, Jr., Ph.D. (Tr. 509-513). He opined that Plaintiff was able to understand and apply instructions in a work setting consistent with borderline intellectual abilities, that there was no evidence Plaintiff had impairment with persistence or pace, that Plaintiff may have "some difficulties" relating to others including co-workers and supervisors, and that he may have "some difficulties" withstanding the stress and pressure associated with day-to-day work activity. (Tr. 512-513). He diagnosed mood disorder not otherwise specified, borderline intellectual functioning, and assigned a GAF score of 52.[4] (Tr. 512).

On September 8, 2015, State Agency psychologist Vicki Warren, Ph.D., reviewed Plaintiff's medical records, and completed a mental RFC assessment. (Tr. 84-88). She also considered Listings 12.04 and 12.05, but did not conclude the criteria was satisfied. (Tr. 84). Dr. Warren found that Plaintiff had understanding and memory limitations, resulting in moderate limitations in his ability to understand and remember detailed instructions. (Tr. 86). She explained that Plaintiff was "capable of understanding and remembering simple but not complex 1-3 step instructions." *Id.* Dr. Warren also assessed limitations in the domain of sustained concentration and persistence, resulting in moderate limitations in Plaintiff's ability to carry out detailed instructions, to maintain attention and concentration for extended periods, and to complete a normal workday or workweek without interruptions from psychologically based symptoms. (tr. 86-87). She explained that Plaintiff was capable of sustaining concentration and persistence on basic tasks in a setting without fast pace. (Tr. 87) In addition, Dr. Warren also

---

[4] A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers. *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. revised, 2000).

assessed limitations in the domain of social interaction, resulting in moderate limitations in his ability to interact appropriately with the general public and to accept instruction/criticism from supervisors. *Id*. She explained that Plaintiff "would do best working in a non-public setting" and was "capable of brief, superficial interactions." *Id*. Finally, Dr. Warren found limitations in the domain of adaptation, resulting in moderate limitations in Plaintiff's ability to respond appropriately to changes in the work setting. *Id*. She explained that Plaintiff was capable of adapting to infrequent changes. *Id*.

On November 30, 2015, State Agency psychologist Karla Voyten reviewed Plaintiff's medical records, and completed a mental RFC assessment. (Tr. 99-101). Her assessment echoed Dr. Warren's earlier opinion. *Id*.

On May 18, 2017, Dr. Wilke completed a mental RFC assessment. (Tr. 1059-1061). Dr. Wilke reported Plaintiff had been diagnosed with major depressive disorder recurrent with psychotic symptoms, major affective disorder, and borderline intellectual functioning. (Tr. 1059). He checked a box indicating that Plaintiff's symptoms would interfere with attention and concentration necessary to perform simple tasks more than 25 percent of the time. (Tr. 1059). Dr. Wilke further opined that Plaintiff would miss seven or more days per month from work due to depression, poor motivation and hallucinations. (Tr. 1060). Dr. Wilke assessed marked limitations in the following areas: the ability to perform activities within a schedule and maintain regular attendance; the ability to sustain an ordinary routine without special supervision; the ability to complete a normal work day and work week without interruption from psychologically based symptoms; and the ability to set realistic goals or make plans independently of others. (Tr. 1060-1061).

8

### III. Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that he suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent him from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent him from doing past relevant work, if other work exists in the

national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

### IV. Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since April 29, 2015, the application date (20 CFR 416.971 *et seq*.).

2. The claimant has the following severe impairments: depressive disorder, borderline intellectual functioning, learning disorder, and alcohol and drug use disorders (20 C.F.R. 416.920(C)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: He is limited to hearing and understanding simple oral instructions and to communicating simple information. The claimant can never work at unprotected heights, around moving mechanical parts, and can never operate a motor vehicle. His ability to understand, remember and carryout instructions is limited to simple, routine tasks, but not at a production rate pace. His ability to use judgment is limited to simple work-related decisions. The claimant could sustain occasional contact with supervisors, coworkers and the public. The claimant's ability to deal with changes in a work setting is limited to tolerating few changes in a routine work setting defined as infrequent changes, explained in advance.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on **** 1987 and was 27 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The medically documented substance dependence disorder is not material to a finding of disability.

11. The claimant has not been under a disability, as defined in the Social Security Act, since April 29, 2015, the date the application was filed (20 CFR 416.920(g)).

(Tr. 19-31).

## V. Law and Analysis

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

**B. Plaintiff's Assignments of Error**

Plaintiff's sole assignment of error asserts that the finding that he did not meet the requirements for Listing 12.05B lacked substantial evidence. (R. 11, PageID# 1125-1129).

At the third step in the sequential evaluation, the burden of proof for establishing that an impairment meets or equals the requirements of a listing rests with the claimant. *See Foster v. Halter*, 279 F.3d 348, 354 (6ᵗʰ Cir. 2001). To meet a listed impairment, a claimant must satisfy *all* of the criteria in the listing. *See Roby v. Comm'r of Soc. Sec.*, 48 Fed. App'x 532, 536 (6ᵗʰ Cir. 2002) (citing *Hale v. Sec'y of Health & Human Servs.*, 816 F.2d 1078, 1083 (6ᵗʰ Cir. 1987)). There is no "heightened articulation standard" in considering the listing of impairments; rather, the court considers whether substantial evidence supports the ALJ's findings. *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6ᵗʰ Cir. 2006); *accord Osborne v. Comm'r of Soc. Sec.*, 2014 U.S. Dist. LEXIS 113937, 2014 WL 4064078 (N.D. Ohio Aug. 15, 2014) (Knepp, M.J.); *Snoke v. Astrue*, 2012 U.S. Dist. LEXIS 21930, 2012 WL 568986, at *6 (S.D. Ohio 2012).

With respect to Listing 12.05 for Intellectual Disorder, 20 C.F.R. Pt. 404, Subpt. P, App. 1, it states in pertinent part:

> B. Satisfied by 1, 2, and 3 (see 12.00H):
>
> > 1. Significantly subaverage general intellectual functioning evidenced by a or b:
> >
> > > a. A full scale (or comparable) IQ score of 70 or below on an individually administered standardized test of general intelligence; or
> > >
> > > b. A full scale (or comparable) IQ score of 71–75 accompanied by a verbal or performance IQ score (or comparable part

> score) of 70 or below on an individually administered
> standardized test of general intelligence; and
>
> 2.  Significant deficits in adaptive functioning currently manifested by
>     extreme limitation of one, or marked limitation of two, of the
>     following areas of mental functioning:
>
>     a.  Understand, remember, or apply information (see 12.00E1); or
>
>     b.  Interact with others (see 12.00E2); or
>
>     c.  Concentrate, persist, or maintain pace (see 12.00E3); or
>
>     d.  Adapt or manage oneself (see 12.00E4); and
>
> 3.  The evidence about your current intellectual and adaptive functioning
>     and about the history of your disorder demonstrates or supports the
>     conclusion that the disorder began prior to your attainment of age 22.

*Id*. The parties do not appear to dispute that Plaintiff had a Full Scale IQ score below 70. Rather, the dispute revolves around Plaintiff's contention that the ALJ's finding—that the B.2. criteria was not satisfied—was not supported by substantial evidence. (R. 11, PageID# 1126-1129). Specifically, Plaintiff maintains that the evidence "demonstrates that [he] has at least marked limitations in his ability to understand, remember or apply information; concentrate, persist, or maintain pace; and, adapt or manage oneself."[5]  (R. 11, PageID# 1126).

_____

[5]  Plaintiff's assertion, even if accepted, does not necessarily establish reversible error. Under the substantial evidence standard, an ALJ's findings "are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the [administrative] decision is supported by substantial evidence, a reviewing court must affirm." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted); *accord Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 604-05 (6th Cir. 2009). Under this standard, it is immaterial whether there is evidence of record that could have supported a finding that the Listing was satisfied so long as there is also evidence supporting the ALJ's determination that it was not. A plaintiff does not establish a lack of substantial evidence simply by citing evidence he or she feels could have supported a different determination.

Pursuant to § 12.00(F)(2), the regulations define the relevant terminology as follows:

a. *No limitation (or none).* You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

b. *Mild limitation.* Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.

c. *Moderate limitation.* Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.

d. *Marked limitation.* Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.

e. *Extreme limitation.* You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R., pt. 404, subpt. P, app. 1 § 12.00(F)(2)(a)-(e).

Plaintiff argues that he has marked limitations in his ability to understand, remember, and apply information based on his low Full Scale IQ score of 64. (R. 11, PageID# 1126). The court finds no merit in such an argument. If a low IQ score alone was sufficient to show marked limitations in this area, there would be no reason to create a redundant set of criteria that had to be satisfied. Plaintiff also points to a mental status questionnaire completed by Dr. Hiremath wherein she observed that Plaintiff has "problems remembering," is "slow to respond," is slow "processing information," and his "range of intelligence is limited." (R. 11, PageID# 1126, citing Tr. 497-498). These observations, however, cannot be construed as unambiguously endorsing a marked level of limitation. In other words, the endorsement that limitations are present does not axiomatically mean that those limitations are so serious as to satisfy a *marked* limitation. Moreover, as expressly noted by the ALJ, Dr. Hiremath, opined that Plaintiff had moderate or less limitations in eleven of twelve areas of understanding and memory, with marked limitations existing only in Plaintiff's ability to understand and remember *detailed* instructions. (Tr. 27,

citing Tr. 493, Exh. 5F). Finally, Plaintiff suggests a Community Support Services (CSS)

intervention note by Melissa Davis, M.A., stating that Plaintiff has "difficulty navigating the

community," also shows marked limitations. (R. 11, PageID# 1126, citing Tr. 908). This last

observation is bereft of any explanation, and it is unclear how this statement unequivocally

demonstrates serious limitations in Plaintiff's ability to understand, remember, and apply

information.

Plaintiff further suggests he has marked limitations in his ability to concentrate, persist, or

maintain pace. (R. 11, PageID# 1126-1127). In making his argument, Plaintiff points to his own

testimony, the testimony of his aunt, and the testimony of his aunt's boyfriend. *Id*. Plaintiff's line

of argument, however, would require the court to engage in its own evaluation of Plaintiff's

credibility and those of several lay witnesses.[6]  The court declines to do so. With respect to

Plaintiff, the ALJ expressly found that "the claimant's statements concerning the intensity,

persistence and limiting effects of [his] symptoms are not entirely consistent with the medical

evidence and other evidence in the record for the reasons explained in this decision." (Tr. 23). To

the extent Plaintiff would take issue with the ALJ's credibility determination, he has not

presented the court with an actual legal argument challenging it; and, therefore, has waived such

argument. *See, e.g., Siple-Niehaus v. Comm'r of Soc. Sec.*, No. 5:15cv01167, 2016 WL 2868735,

at n. 12 (N.D. Ohio, May 17, 2016) (finding that plaintiff "has not challenged the ALJ's

---

[6] The court is aware that Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304 at *10 (Oct. 25, 2017) eliminated the word "credibility," a change which the Sixth Circuit has characterized as "merely eliminating 'the use of the word credibility . . . to clarify that the subjective symptoms evaluation is not an examination of an individual's character.'" *Butler v. Comm'r of Soc. Sec.*, No. 5:16cv2998, 2018 WL 1377826, at *12 (N.D. Ohio, Mar. 19, 2018) (Knepp, M.J.) (*quoting Dooley v. Comm'r of Soc. Sec.*, 656 Fed. App'x 113, 119 n.1 (6th Cir. 2016)). Like several other courts, this court finds little substantive change between the two social security rulings, and the changes largely reflect a preference for a different terminology.

credibility determination" and, therefore, "arguments pertaining to the ALJ's assessment of her credibility have been waived.") (Burke, M.J.); *cf. Williams v. Comm'r of Soc. Sec.*, No. 2:14cv2655, 2016 WL 2733518, at *2 (S.D. Ohio May 10, 2016) (declining to consider Plaintiff's argument challenging the ALJ's credibility determination, because it was not raised before the Magistrate Judge in the statement of errors). The ALJ also ascribed little weight to the lay observations of Plaintiff's aunt and her boyfriend in an extended discussion. (Tr. 28-29). Plaintiff has not raised or identified any legal error in the ALJ's treatment of these lay witness opinions.

Plaintiff does point to some professional opinions, such as Dr. Hiremath's statement that Plaintiff can maintain attention "to some extent." (R. 11, PageID# 1127). Again, it is unclear how Dr. Hiremath's vague observation amounts to incontrovertible evidence of a marked level of limitation. Although the ALJ accorded great weight to Dr. Hiremath's assessments, he specifically declined to "assign controlling weight because this assessment [Exh. 6F] is somewhat vague in terms of what work related tasks the claimant could perform." (Tr. 27). Plaintiff has not assigned as error the weight the ALJ ascribed to the opinions of Dr. Hiremath or any other medical source. Moreover, while Plaintiff also asserts Dr. Wilke's opinion that he would be off-task greater than 25 percent of an eight hour work day supports a finding of marked limitations in the area of concentration, persistence, and/or maintain pace (Tr. 11, PageID# 1127), the ALJ specifically rejected this opinion and ascribed Dr. Wilke's assessment little weight. (Tr. 25). Again, Plaintiff has not argued any error stemming from the ALJ's explanation for ascribing little weight to Dr. Wilke's opinion. Finally, the observations cited by Plaintiff from social worker Blake also fail to compel a finding that Plaintiff had marked limitations in this area. Again, the ALJ also assigned little weight to his observations "because they are

16

contradicted by consistently (albeit not universally) normal mental status exams, good hygiene

an ability to adequately interact with a caseworker, care providers and family members." (Tr. 24-

25). Plaintiff has offered no argument as to how the ALJ's consideration of Mr. Blake's

observations were erroneous.

Finally, Plaintiff avers that he had marked limitations in his ability to adapt or manage

himself. (R. 11, PageID# 1127). As stated above, to meet or equal the listing, Plaintiff must

demonstrate marked limitations in two of the four aforementioned areas. Plaintiff has not argued

that he had marked limitations in his ability to interact with others. Given the court's above

finding that his arguments in two of the other areas are without merit, it is not sufficient if

Plaintiff has a marked limitation in only one of four areas as it pertains to Listing 12.05B.

Nevertheless, Plaintiff's citations to his own statements, statements of lay witnesses, or

observations of caseworkers do not render the ALJ's determination—that Plaintiff has no more

than moderate limitations in these areas—unsupported by substantial evidence.

Plaintiff's argument, consisting primarily of pointing to pieces of evidence that he believes

could have supported a finding of a listing-level impairment, essentially asks the court to look at

the evidence of record and make its own determination that the criteria of Listing 12.05B was

satisfied. This court's role in considering a social security appeal, however, does not include

reviewing the evidence *de novo*, making credibility determinations, or reweighing the evidence.

*Brainard*, 889 F.2d at 681; *see also Stief v. Comm'r of Soc. Sec.*, No. 16-11923, 2017 WL

4973225, at *11 (E.D. Mich. May 23, 2017) ("Arguments which in actuality require 're-

weigh[ing] record evidence' beseech district courts to perform a forbidden ritual."), *report and

recommendation adopted*, 2017 WL 3976617 (E.D. Mich. Sept. 11, 2017). Although there may

be cases where clear-cut evidence shows listing criteria was satisfied or that critical evidence,

capable of showing the criteria was satisfied, was not considered, this is not such a case.

A reviewing court may "look to the ALJ's decision in its entirety to justify the ALJ's step-three analysis." *Osborne*, 2014 U.S. Dist. LEXIS 113937 at *22. The ALJ's decision contains a fairly exhaustive discussion of the evidence of record. (Tr. 19-29). Plaintiff has not identified a dearth of evidence supporting the ALJ's conclusion that Listing 12.05B was not satisfied. Further, the ALJ's determination that Listing 12.05B was not satisfied is supported by the two State Agency psychologists' opinions. (Tr. 84, 97). Thus, Plaintiff's sole assignment of error is without merit.

### IV. Conclusion

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.

IT IS SO ORDERED.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: March 29, 2021